Patrick M. Flatley
United States Bankruptcy Judge
Dated: Thursday, September 01, 2011 8:43:31 AM

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| GEORGE L. MOORE and | ) | |
| LYDIA M. MOORE, | ) | Case No. 10-1303 |
| | ) | |
| Debtors. | ) | Chapter 7 |
| _____ | ) | |
| | ) | |
| GEORGE L. MOORE and | ) | |
| LYDIA M. MOORE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 10-92 |
| | ) | |
| AMERICAN GENERAL, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

American General filed a $56,674.90 proof of claim in the Chapter 7 bankruptcy case of George and Lydia Moore (the "Debtors"). The Debtors did not object to the claim but filed this adversary proceeding asserting that American General violated the West Virginia Consumer Credit Protection Act and that the note held by American General is void. American General answered the complaint and seeks to compel arbitration.

The Debtors contend that the arbitration agreement is unconscionable, and, therefore, unenforceable. American General asserts that the arbitration agreement is not unconscionable, and challenges to the enforceability of the agreement are to be arbitrated.

Generally, "an agreement to arbitrate is valid, irrevocable, and enforceable[] as a matter of

1

federal law." *Perry v. Thomas*, 482 U.S. 483, 492 (1987). In fact, § 2 of the Federal Arbitration Act ("FAA") states a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This "heavy presumption of arbitrability required that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." *Levin v. Alms and Associates*, 634 F.3d 260, 266 (4th Cir. 2011) (citing *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989)).

Although the FAA favors arbitration, "generally applicable contract defenses, such as . . . unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 of the FAA." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *see also, Wince v. Easterbrook Cellular Corp.*, 681 F.Supp.2d 679, 683 (N.D.W. Va 2010) (same). When determining whether a ground exists to avoid the agreement, courts look to state law. *See Perry*, 482 U.S. at 492 n.9.

In West Virginia, a finding of unconscionability requires both "gross inadequacy in bargaining power" and "terms unreasonably favorable to the stronger party." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 502 (4th Cir. 2002) (citing *Troy Mining Corp. v. Itmann Coal Co.*, 176 W.Va. 599 (1986)). The test is conjunctive; thus, "[a] litigant who complains that he was forced to enter into a fair agreement will find no relief on grounds of unconscionability." *Adkins*, 303 F.3d at 502. Because the court finds the arbitration terms not unreasonably favorable to American General, the court need not address whether inadequacy in bargaining power existed.

Here, the Debtors complain that the arbitration agreement is unreasonably favorable to American General on the basis that it: (a) was buried in the packet of loan closing documents they received and was not explained to them; (b) requires arbitration in a forum in which the arbitrators have a pecuniary interest in the outcome of the arbitration; (c) imposes heavy costs on the Debtors; and (d) does not bind both parties to a mutual obligation to arbitrate.

The arbitration agreement begins on the third page of the Loan Agreement and Disclosure Statement executed by the Debtors at closing, and the Debtors acknowledged reading and receiving a copy of the arbitration agreement before signing it. The agreement provides, in pertinent part, that:

> Lender does not have to initiate arbitration before exercising lawful self-help remedies or

> judicial remedies . . . .
>
> . . .
>
> The arbitration will be conducted under the rules and procedures of the National Arbitration Forum . . . . In the event that NAF is either unable, unwilling, or deemed not appropriate by a court to resolve a Covered Claim, or I object to the NAF for good cause, then Lender and I agree to submit all disputes to the American Arbitration Association ("AAA") . . . . If there is a conflict between the rules of the NAF (or the AAA) and this Arbitration Agreement, this Arbitration Agreement will govern.
>
> . . .
>
> NAF will provide . . . a list of seven (7) possible arbitrators. Lender and I will each have an opportunity to strike three (3) persons from that list.
>
> . . .
>
> [N]othing in this Arbitration Agreement shall limit the arbitrator's ability to enforce any of my rights or impose any remedies available to me under any applicable consumer protection laws or regulations.
>
> . . .
>
> I may have to bear some of these fees; however, if I am not able to pay such fees or think they are too high, Lender will consider any reasonable request to bear the cost . . . . Each party will also pay for its own costs, including fees for attorneys, experts, and witnesses, unless otherwise provided by law . . . .
>
> . . .
>
> [T]he arbitrator shall be bound by the Federal Rules of Evidence . . . . The arbitrator's findings, reasoning, decision, and award shall be . . . consistent with the law of the jurisdiction that applies to the loan . . . .
>
> . . .
>
> The arbitrator's (or panel's) findings, decision, and award shall be subject to judicial review on the grounds set forth in 9 U.S.C. § 10, as well as on the grounds that the findings, decision, and award are manifestly inconsistent with the terms of this Arbitration Agreement and any applicable law or rules.
>
> . . .
>
> The arbitrator may award punitive damages only under circumstances where a court of competent jurisdiction could award such damages . . . . [In doing so], the arbitrator must abide by all applicable state and federal laws regarding the amount of such damages . . . .
>
> . . .
>
> The arbitration will take place in the county where I live . . . .

(Exhibit 1, American General's Reply Brief).

Contrary to the Debtors' assertion, the arbitration agreement is not buried in the packet of loan closing documents executed by the Debtors at closing; it begins on the third page of the packet, is only a page and a half in length, and the Debtors acknowledge receiving and reading the

3

arbitration agreement. In fact, it was the first document presented to the Debtors after the Truth in Lending Disclosures.

Also, the mechanistic approach for selecting an arbitrator does not appear to unreasonably favor American General. According to the arbitration agreement, the selection of an arbitrator for arbitration before the National Arbitration Forum ("NAF") will be accomplished by providing the parties with a list of seven possible arbitrators, and each party removing three names in alternate succession, leaving one arbitrator to conduct the arbitration.

The parties state, however, that the NAF is no longer eligible to conduct the arbitration in this case; thus, the arbitration would be conducted by the American Arbitration Association ("AAA"). Although the AAA will be conducting the arbitration, the process for selecting an arbitrator is controlled by the arbitration agreement. The court is unaware of the AAA's usual arbitrator-selection procedure, but the arbitration agreement provides that the arbitration agreement will control in the event of any conflict between the rules of the AAA and the arbitration agreement. Thus, it appears to the court that the AAA will follow the same arbitrator-selection process outlined in the arbitration agreement, and, the court finds the arbitrator-selection process outlined in the arbitration agreement fair and not unreasonably favorable to American General.

Moreover, the court is unpersuaded by the Debtors allegation that the arbitration agreement is unconscionable based on arbitrators being paid on a "feeder-case" basis. Congress declared that arbitration is favored in the United States when it promulgated the Federal Arbitration Act, 9 U.S.C. § 1, et seq. Even if a systematic bias exists favoring "repeat customers," any such systematic bias, especially in view of Congress's policy favoring arbitration, does not make the contractual terms of the parties' arbitration agreement unreasonably favorable to American General. Furthermore, nothing in this case demonstrates that the arbitrator has a bias because an arbitrator has not yet been selected.

Additionally, the payments for the costs of arbitration do not unreasonable favor American General. Although the costs of arbitration can be more burdensome than filing an adversary proceeding in this court, the Debtors, by signing the agreement, only obligated themselves to pay some of the fees, and, the agreement provides a mechanism by which the Debtors can negotiate the payment of fees with American General. Also, each party is responsible for its own costs, including attorney fees, unless otherwise provided by law, which is consistent with the American Rule that

each party bear their own costs and fees in litigation.

Finally, the arbitration agreement does not suffer from a lack of mutuality based on American General's retention of some rights to assert its claims in court. The Debtors rely on *Arnold v. United Companies Lending Corp.*, 511 S.E.2d 854 (W.Va. 1998), for the proposition that the lack of mutuality in an arbitration provision renders it unconscionable. There, the court found that ". . . United Lending's access to the courts is wholly preserved in every conceivable situation where United Lending would want to secure judicial relief against the Arnolds." *Id*. at 858.

Here, the only rights of American General that are excluded from arbitration are rights to pursue garnishment, repossession, replevin, or foreclosure. By its terms, the arbitration agreement requires American General to arbitrate any disputes relating to alleged deficiencies surrounding the formation of the contract, fraud, or any other action by American General against the Debtors. Thus, the court cannot find that the terms of the arbitration agreement are so one-sided as to be unconscionable. *E.g.*, *Miller v. Equifirst Corp. of WV*, Civil Action No. 2:00-0335, 2006 WL 2571634, *11, n.6 (S.D.W. Va. Sept. 5, 2006) (distinguishing *Arnold* from cases analogous to the case currently before this court).

Therefore, the court does not find the arbitration agreement in question to be unconscionable, and will enter a separate order that stays this adversary proceeding and compels arbitration.